United States Court of Appeals,

Fifth Circuit.

No. 94-10497.

The Matter of ZALE CORPORATION, Debtor.

Alan D. FELD, and National Union Fire Insurance Company, Inc., of Pittsburgh, Pennsylvania, Appellants,

v.

ZALE CORPORATION, et al., Appellees.

Sept. 7, 1995.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Alan D. Feld and National Union Fire Insurance Company ("NUFIC" or "National Union") appeal the district court's affirmance of the bankruptcy court's approval of a settlement entered in the bankruptcy proceedings of Zale Corporation and its affiliates (collectively "Zale" or "the debtor"). We reverse and remand.

I

More than two years prior to the approval of the settlement at issue in this case, Zale filed for protection under Chapter 11 of the Bankruptcy Code. See 11 U.S.C. § 1101-1173 (1988 & West Supp. V 1994). The official creditors' committees initiated investigations of claims that they planned to assert against the debtor's directors and other third parties. After the committees threatened to file suit against the former directors—Irving R.

1

Gerstein, Charles F. Gill, James Gillies, and Alan D. Feld, settlement discussions ensued. These negotiations included discussion of Zale's directors and officers ("D & O") liability policies. CIGNA Insurance Company ("CIGNA") had issued a D & O Liability and Company Reimbursement Liability Policy to provide primary insurance coverage for Zale's directors and officers. CIGNA's policy had a limit of $10 million. NUFIC had issued an excess D & O policy to Zale for up to $15 million.[1]

Eventually, various parties to the Zale bankruptcy jointly filed a motion in the bankruptcy court seeking approval of a settlement agreement between the debtor and three of Zale's former directors—Gerstein, Gill, and Gillies—on one side and CIGNA, the primary D & O liability insurer, on the other. The settlement agreement included the following relevant provisions:

> 1) Gerstein, Gill, and Gillies would agree to a $32 million judgment against them,[2] to be satisfied solely out of insurance proceeds.[3]
>
> 2) Gerstein, Gill, and Gillies would assign to Zale all rights under the insurance policies.
>
> 3) Gerstein, Gill, and Gillies would assign to Zale all rights of contribution or indemnification against third parties

---

[1]An excess policy provides coverage in excess of the primary policy limits. Accordingly, such a policy is triggered only upon the exhaustion of the limits of the primary policy. NUFIC's policy provided "following form" coverage; that is, it incorporated the terms and conditions of the primary CIGNA policy.

[2]This provision was later modified. Rather than agreeing to a judgment, the directors agreed to stipulate to certain facts that would provide the basis for a judgment against them.

[3]A third company had issued a separate excess D & O policy for $10 million to cover these three directors.

arising out of their activities as directors of Zale.

4) CIGNA would pay to Zale $10 million, ostensibly the limits of its policy.

5) CIGNA would sell to Zale all subrogation rights arising out of those rights assigned by Gerstein, Gill, and Gillies. Zale would pay CIGNA $1.5 million in cash and up to $2.5 million in proceeds from suits against other third parties.[4]

The bankruptcy court scheduled a settlement hearing to coincide with the hearing on the confirmation of Zale's reorganization plan. On the evening of the first day of the hearing, the settling parties modified the settlement agreement to include a provision that conditioned the settlement on the grant of a permanent injunction that would prevent parties from suing the settling parties for their actions in relation to the settlement.[5] The desired injunction stated as follows:

[I]n order to effectuate the terms of the Settlement Agreement, any Person, including without limitation, National Union Fire Insurance Company, is forever barred and enjoined (1) from filing, commencing, asserting or continuing any and all claims, actions, causes of action, proceedings or suits, in law or equity (other than an appeal of this Order), against CIGNA, the Debtors, the Defendants [Gerstein, Gill, and Gillies], Zale Holding Corporation, Reorganized Zale,[6] the

---

[4]These suits included claims against Feld's law firm, Akin, Gump, Hauer, & Feld, and against the law firm of Skadden, Arps, Slate, Meagher & Flom, both of which had provided legal services to Zale prior to its bankruptcy.

[5]One week prior to the hearing, NUFIC had filed a declaratory judgment action in district court to preserve coverage-related issues and to obtain release from its obligations if the settlement closed. NUFIC also sought to enjoin approval of the settlement.

[6]"Reorganized Zale" referred to Zale Corporation after it emerged from bankruptcy.

Litigation Entity,[7] their parents, subsidiaries, affiliates, shareholders, directors, officers, agents, employees, attorneys, agents, heirs, successors and assigns, or the Official Committees or their Professional Persons or the other Plan Proponents or their attorneys (collectively, the "Protected Parties"), based upon, arising out of or relating in any way to the participation of any of the Protected Parties in the negotiation, formulation, submission, approval, execution or consummation of the Settlement Agreement, or (2) from otherwise seeking to collaterally attack the Settlement Agreement, this Order, or the subject matter hereof.

The settling parties' stated purpose in seeking the injunction was to prevent NUFIC and Feld[8] from bringing or pursuing claims against CIGNA for bad faith and breach of contract.[9] The settling parties also modified the settlement agreement to include a provision under which Zale agreed to indemnify CIGNA for bad faith or other claims against CIGNA concerning the settlement.

On the second day of the hearing, the bankruptcy court confirmed the reorganization plan and two other settlements[10] before

---

[7]The "Litigation Entity" was created in the reorganization plan as the entity responsible for pursuing all unresolved actions against third parties. The Litigation Entity later evolved as Jewel Recovery, L.P.

[8]Feld was a former Zale director who had been excluded from the settlement. CIGNA and Zale state that the Creditors' Committees refused to include Feld in the settlement.

[9]See Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 138 ("[W]hat we're seeking to do is to prevent National Union from coming after Cigna or its professionals or the Committees or its professionals or any other interested persons, the defendants' counsel or the defendants themselves, and someway collaterally attacking the agreement we expect to be and hope to be approved by this Court...."). CIGNA later broadened the purported scope of its argument to include Feld.

[10]These were a $70 million settlement between Zale and its controlling shareholder, Swarovski International Holding, A.G., and a $9.4 million settlement between Zale and its outside accounting firm, Arthur Andersen.

4

turning its attention to the so-called CIGNA settlement. NUFIC and

Feld[11] both challenged the proposed injunction and settlement,

arguing that the issuance of the injunction would deprive them of

certain rights and that the court could not do so because NUFIC and

Feld were not parties to the bankruptcy and had not received proper

notice of the settlement.[12] The court refused to entertain argument

or testimony on NUFIC and Feld's tort and contract claims, stating

that these issues were not relevant to "the underlying issues that

the Court has to address in the motion [to approve the settlement].

That is, is the settlement reasonable?"

Two days later, the bankruptcy court approved the modified

settlement, adding the following language to the injunction:

> [P]rovided, however, that nothing in this paragraph shall
> impair National Union from asserting defensively any issues of
> coverage (which are not otherwise determined by the findings
> of fact and conclusions of law entered by this Court on May
> 21, 1993) with respect to any policy of insurance issued by
> National Union or any other Person from defending claims
> against them....

As part of its approval order, the bankruptcy court made several

findings of fact, only two of which are at issue here. First, the

court found that "CIGNA has acted in good faith pursuant to the

obligations under its policy." Second, the court found that "the

CIGNA policy will be exhausted through the payment of the policy

---

[11]Feld's actual appearance did not occur until the third day
of the hearing.

[12]All of the parties provided detailed statements of facts
relating to the sufficiency of notice to both NUFIC and Feld.
Because we decide this case on other grounds, we have not
included notice-related facts in this discussion. We also do not
discuss the discovery sanctions levied by the bankruptcy court
against NUFIC as they are not before us on appeal.

limit."

Both NUFIC and Feld appealed the bankruptcy court's settlement approval order to the district court. During the interim period between the bankruptcy's court's approval and the district court's resolution of the appeal, the parties to the bankruptcy consummated the reorganization plan. The district court affirmed the bankruptcy court's approval of the settlement in all respects. NUFIC and Feld now appeal the judgment of the district court on various grounds.

## II

Feld and NUFIC challenge the entry of the injunction, arguing that the bankruptcy court exceeded its power under section 105 of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) (1988) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). They also challenge the bankruptcy court's factual findings with respect to the CIGNA policy. We review the bankruptcy court's factual findings for clear error, and we review issues of law de novo. *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 565 (5th Cir.1995).[13]

---

[13]CIGNA and Zale argue initially that NUFIC and Feld lack standing to appeal because the injunction does not harm them. We find no merit in this contention—the fact that the injunction bars NUFIC and Feld in any way gives them standing to appeal it. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-63, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (noting that when "the plaintiff is himself an object of the action (or forgone action) at issue ..., there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it").

Before we address whether the bankruptcy court properly exercised § 105 power to issue the injunction, we must first examine whether a basis for the bankruptcy court's subject matter jurisdiction existed.

> Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction.

*American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621, 624 (9th Cir.1989) (citations omitted); *see also Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 787 (11th Cir.1990) (noting that first step in determining the existence of bankruptcy jurisdiction is whether federal jurisdiction exists in the district court); *United States Dep't of Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1475 (4th Cir.1990) (stating that § 105 injunction cannot exceed court's jurisdiction).[14]

Because Feld and NUFIC are not parties to the bankruptcy, the actions at issue between noncreditors—NUFIC and Feld—and a nondebtor—CIGNA—are third-party actions. Accordingly, we must determine if these actions are "related to" the bankruptcy case. *See Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 926 (3d

---

[14]Very little Fifth Circuit case law exists concerning injunctions issued by a bankruptcy court to bar claims between nondebtor third parties. For this reason, we have looked to cases in other circuits and utilized the other circuits' reasoning where we have found it persuasive.

Cir.1990) ("Since we are determining the bankruptcy court's jurisdiction over a case between two non-debtors, we must examine the "related to' language of Section 1334.").

> The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute. Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

*Celotex Corp. v. Edwards,* --- U.S. ----, ----, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). We need not identify which jurisdictional provision specifically applies because the provisions operate in conjunction. *In re Walker,* 51 F.3d at 568-69; *accord Querner v. Querner (In re Querner),* 7 F.3d 1199, 1201 (5th Cir.1993); *see also Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987) ("For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under,' "arising in a case under,' or "related to a case under,' title 11."). "Instead, to ascertain whether jurisdiction exists, "it is necessary only to determine whether a matter is at least "related to" the bankruptcy.' " *In re Walker,* 51 F.3d at 569 (quoting *In re Wood,* 825 F.2d at 93) (other citations omitted).

> [Section 1334's] reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same

8

forum. *A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.* Once they are shoehorned into the bankruptcy court on the authority of section 1334(b), such suits can then be stayed by authority of section 105 of the Bankruptcy Code....

*Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161-62 (7th Cir.1994) (citations omitted) (emphasis added). Accordingly, when we define "related to" jurisdiction, we should "avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *In re Lemco Gypsum, Inc.,* 910 F.2d at 787.

Nonetheless, "a bankruptcy court's "related to' jurisdiction cannot be limitless." *Celotex,* --- U.S. at ----, 115 S.Ct. at 1499. "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer federal jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Zerand-Bernal Group, Inc.,* 23 F.3d at 162. For the bankruptcy court to have subject matter jurisdiction, therefore, some nexus must exist between the related civil proceeding and the Title 11 case. *In re Lemco Gypsum, Inc.,* 910 F.2d at 787.[15] Otherwise, "an overbroad

---

[15]*See also Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir.1995) ("For subject matter jurisdiction to exist in a "related to' action, there must be some nexus between the civil proceeding and the Title 11 case."); *Wisconsin Dep't of Indus., Labor & Human Relations v. Marine Bank Monroe (In re Kubly),* 818 F.2d 643, 645 (7th Cir.1987) ("[D]isputes among creditors of a bankrupt come within the federal bankruptcy jurisdiction only if they involve property of the estate or if resolving two creditors' intramural squabble will affect the recovery of some other creditor.").

construction of § 1334(b) may bring into federal court matters that should be left for state courts to decide." *In re Lemco Gypsum, Inc.,* 910 F.2d at 787-88 (citations omitted).

In *In re Wood,* 825 F.2d at 93, we adopted the Third Circuit's test for determining whether a matter is "related to" a bankruptcy case and held that a matter is "related to" the bankruptcy case for § 1334 purposes if " "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " *In re Wood,* 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *accord In re Walker,* 51 F.3d at 569. Moreover, " "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankrupt estate.' " *In re Walker,* 51 F.3d at 569 (quoting *Pacor, Inc.,* 743 F.2d at 994). Conversely, the bankruptcy court has no jurisdiction over a matter that does not affect the debtor. *See Celotex,* --- U.S. at ---- n. 6, 115 S.Ct. at 1499 n. 6 (reciting *Pacor* test and commenting that "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor").[16]

We begin our analysis by noting that a large majority of cases reject the notion that bankruptcy courts have "related to" jurisdiction over third-party actions. *See, e.g., In re Walker,* 51

---

[16]*Celotex* is not dispositive of this case because the Court decided the case on alternative grounds. *Id.*

10

F.3d at 569; *cf. Homsy v. Flood (In re Vitek),* 51 F.3d 530, 538 n. 39 (5th Cir.1995) (wondering " "out loud' about the extent, if any, to which the tools of injunctive relief and settlement (or "compromise') are appropriate ... in dealing with the rights of third party creditors of the bankruptcy" and stating that "the broad latitude afforded bankruptcy courts in fashioning remedies should not be used in a way that tramples on the rights of dissenters among creditors or non-parties to the proceedings").

Those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate,[17] or because the dispute over the asset would have an effect on the estate.[18] Conversely, courts have held that a third-party action does not create "related to" jurisdiction when the asset in question is not

---

[17]*See, e.g., In re Wood,* 825 F.2d at 93-94 (holding that "related to" jurisdiction over third-party action existed because assets at issue in claims against debtor were property of estate).

[18]*See, e.g., 8300 Newburgh Rd. Partnership v. Time Constr., Inc. (In re Time Constr., Inc.),* 43 F.3d 1041, 1045 (6th Cir.1995) (explicitly applying same standard as Fifth Circuit and noting in dicta that third-party action was related to bankruptcy because outcome of action against sole shareholder directly impacted value of debtor's shares); *Abramowitz v. Palmer,* 999 F.2d 1274, 1278 (8th Cir.1993) (holding that third-party action was related to bankruptcy because debtor's rights in jointly-held property could not otherwise be determined); *Kaonohi Ohana, Ltd. v. Sutherland (In re Kaonohi Ohana, Ltd.),* 873 F.2d 1302, 1306-07 (9th Cir.1989) (upholding "related to" jurisdiction over third-party action because specific performance remedy in third-party action would reduce damages in breach-of-contract claim against estate).

11

property of the estate[19] and the dispute has no effect on the estate.[20]  Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to

_____

[19]*See, e.g., Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.),* 19 F.3d 1077, 1084 (5th Cir.) (holding that issue of third-party creditor's rights was not "related to" bankruptcy after third-party lease had been rejected and was not part of bankruptcy estate), *cert. denied,* --- U.S. ----, 115 S.Ct. 201, 130 L.Ed.3d 132 (1994); *Graziadei v. Graziadei (In re Graziadei),* 32 F.3d 1408, 1410 (9th Cir.1994) (holding that third-party dispute over property exempt from estate did not come under bankruptcy court's jurisdiction); *In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992) (holding that third-party adversary complaint did not confer jurisdiction where property at issue was not property of estate); *Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 804 (3d Cir.1985) (rejecting jurisdiction over debtor's claims against third party because claims arose postpetition and therefore were not property of the estate).

[20]*See, e.g., Specialty Mills, Inc.,* 51 F.3d at 775 (holding that dispute between third party and debtor's bank did not relate to bankruptcy and therefore bankruptcy court lacked subject matter jurisdiction); *Zerand-Bernal Group, Inc.,* 23 F.3d at 162 (holding that products liability suit was not related to bankruptcy case because suit was neither by nor against debtor, and suit could not affect estate because bankruptcy had ended); *In re Edwards,* 962 F.2d at 643 (holding that adversary complaint did not confer jurisdiction where determination of dispute would not impact rights of debtor); *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1519 (10th Cir.1990) (rejecting jurisdiction over action concerning lien on nonestate property because it would have no effect on distribution of assets or administration of estate); *Quattrone Accountants, Inc.,* 895 F.2d at 926 (holding that tax claim against responsible person was not related to bankruptcy because debtor's liability was entirely independent of responsible person's liability, even though such liability arose from same tax deficiency); *Washburn & Kemp, P.C. v. Committee of Dalkon Shield Claimants (In re A.H. Robins Co.),* 846 F.2d 267, 270 (4th Cir.1988) (holding that law firm's action against insurer for fees was not related to relationship between insurer and debtor insured, even though law firm represented debtor on behalf of insurer); *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986) (rejecting jurisdiction over action between debtor's auditors and third-party claimant because plan was already confirmed and action would have no possible effect on estate).

12

make the third-party action "related to" the bankruptcy.[21] Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit. *In re Boone,* 52 F.3d at 961; *In re Lemco Gypsum, Inc.,* 910 F.2d at 789; *Pacor, Inc.,* 743 F.2d at 994; *see also In re Kubly,* 818 F.2d at 645 ("Like other federal courts, a bankruptcy tribunal is one of

---

[21]*See Community Bank of Homestead v. Boone (In re Boone),* 52 F.3d 958, 961 (11th Cir.1995) (holding that debtor's tort suit against creditor was not related to bankruptcy because "although the claim ... will share the common factual issue [with a bankruptcy proceeding]," the common issue did not invoke jurisdiction); *Specialty Mills, Inc.,* 51 F.3d at 774 ("There may be some convergence between [the debtor's] affairs and the dispute between [the third party] and [the debtor's bank]. However, that possibility does not impart "related to' jurisdiction unless the dispute also affects [the debtor's] bankruptcy estate or the allocation of assets."); *United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1492 (9th Cir.1993) (declining to extend stay to funds that were not property of estate because "[t]he mere fact that the [third party's] claim against the [nondebtor] shares a similar legal and factual nexis with the [third-party's] claim against the [debtor] is not sufficient ground for extending the automatic stay."); *In re Lemco Gypsum, Inc.,* 910 F.2d at 789 ("Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors." (citations omitted)); *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 748-49 (7th Cir.1989) (concerning action by insurance company and rejecting jurisdiction over claims against insureds other than the debtor, because "[a]lthough the request ... has a nexus with the bankruptcy—in the sense that it would be convenient, and promote consistency, to resolve all questions concerning the policy at one go—it does not necessarily have a financial effect on the estate (or the apportionment among its creditors)."); *In re Xonics,* 813 F.2d at 131 ("The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved."); *Pacor, Inc.,* 743 F.2d at 994 ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [§ 1334(b) ].").

13

limited jurisdiction.  Its power must be conferred, and it may not

be enlarged by the judiciary because the judge believes it wise to

resolve the dispute.").  Accordingly, the district court's desire

to "foster and encourage and then preserve settlement in federal

court" does not in and of itself confer jurisdiction.

While it is true that the bankruptcy court has jurisdiction to

determine whether a settlement between the debtor and other parties

is fair and equitable,[22] "looking only to the fairness of the

settlement as between the debtor and the settling claimant [and

ignoring third-party rights] contravenes a basic notion of

fairness."  *In re Aweco, Inc.*, 725 F.2d at 298;  *see also F.D.I.C.*

*v. Jones (In re Jones),* 966 F.2d 169, 173 (5th Cir.1992)

(discussing § 105(a) and court's duty to avoid unfairness and

---

[22]"The bankruptcy court derives its authority to approve
settlements from Bankruptcy Rule 9019(a)."  *United States v.*
*Aweco, Inc. (In re Aweco, Inc.),* 725 F.2d 293, 297 (5th Cir.),
*cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984).
"A court may approve such a compromise or settlement only when it
is "fair and equitable.'  The words "fair and equitable' are
terms of art—they mean that "senior interests are entitled to
full priority over junior ones.' "  *Id.* at 298 (quoting *S.E.C. v.*
*American Trailer Rentals Co.,* 379 U.S. 594, 85 S.Ct. 513, 13
L.Ed.2d 510 (1965)) (internal citations omitted);  *see also*
*Continental Airlines, Inc. v. Air Line Pilots Ass'n (In re*
*Continental Airlines Corp.),* 907 F.2d 1500, 1508 (5th Cir.1990)
(noting that "fair and equitable" means that senior creditors
have priority over junior creditors);  *American Can Co. v. Herpel*
*(In re Jackson Brewing Co.),* 624 F.2d 605, 608 (5th Cir.1980)
(requiring court to ensure that compromise is fair and equitable
and "in the best interest of the estate");  *Momentum Mfg. Corp.*
*v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d
1132, 1136 (2d Cir.1994) ("It is well settled that bankruptcy
courts are courts of equity, empowered to invoke equitable
principles to achieve fairness and justice in the reorganization
process.");  *In re Energy Coop., Inc.,* 886 F.2d 921, 927 (7th
Cir.1989) ("The benchmark for determining the propriety of a
bankruptcy settlement is whether the settlement is in the best
interests of the estate.").

14

injustice); *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan),* 957 F.2d 1020, 1026, 1031 (2d Cir.1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment").

Moreover, the "fair and equitable" determination does not give the bankruptcy court jurisdiction over settlement conditions that do not bear on the court's duties to preserve the estate and protect creditors. *In re Continental Airlines Corp.,* 907 F.2d at 1508-09.[23]

> [W]e must establish independently that a dispute is part of a *bankruptcy* case; the existence of power within the bankruptcy case does not imply an expansion of jurisdiction beyond it. To the contrary, it suggests that courts must be particularly careful in ascertaining the source of their power, lest bankruptcy courts displace state courts for large categories of disputes in which some[one] ... may be bankrupt.

*In re Kubly,* 818 F.2d at 645. Accordingly, a bankruptcy court may potentially include an injunction as part of a settlement only "once jurisdiction is established." *In re Davis,* 730 F.2d 176, 183-84 (5th Cir.1984).

---

[23]*See also Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.),* 805 F.2d 1175, 1188 n. 16 (5th Cir.1986) ("[T]he powers of a court [to grant equitable relief] are not unlimited."), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); *Gallucci v. Grant (In re Gallucci),* 931 F.2d 738, 742 (11th Cir.1991) (discussing turnover action as normally a core proceeding, but "[i]f the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject matter jurisdiction").

The bankruptcy court did have jurisdiction over CIGNA because CIGNA, through its participation in the settlement, is "related to" the estate and the debtor. However, "it is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics),* 813 F.2d 127, 131 (7th Cir.1987). The "disputes" in question are Feld and NUFIC's tort and contract claims against CIGNA, the litigation of which the injunction purports to prevent. Consequently, the issue before us is not whether the bankruptcy court had jurisdiction over the settlement and CIGNA, but whether the bankruptcy court had jurisdiction over an attempt to enjoin actions between Feld and CIGNA and between NUFIC and CIGNA.

We can divide the actions against CIGNA that are at issue in this case into two categories: (1) the tort claims, such as bad faith, and (2) the contract claims concerning the CIGNA D & O policy. We address the tort claims first.

1

Feld and NUFIC argue that their bad faith claims against CIGNA do not relate to the bankruptcy because the claims are not property of the estate and they have no effect on the estate. We agree. If either Feld or NUFIC were to prevail on a bad faith claim against CIGNA, compensation would derive not from the Zale D & O policy proceeds, but from CIGNA's other assets. Because CIGNA proposes only to contribute the $10 million policy limit to the estate and the maximum amount that the estate could claim from CIGNA with respect to the policy is that same $10 million, any

16

outlays outside of that fund do not affect the estate.

CIGNA argues, however, that the bad faith claims will affect the estate because Zale has agreed to indemnify CIGNA for any such claims. Although indemnification has brought otherwise unrelated actions within the scope of a bankruptcy court's jurisdiction in other cases,[24] the claims at issue in those cases involved the debtor's behavior, thereby providing a basis for the debtor's obligation that was independent of the indemnification agreement. In those cases, the purpose of the indemnification agreement was to eliminate the necessity for a formal suit against the debtor; therefore, the indemnification agreement satisfied a procedural goal, not a substantive one.

In the present case, the bad faith claims involve a creditor's behavior. The only relation of those claims to the estate rests on Zale's agreement to indemnify CIGNA for claims that NUFIC and Feld could not bring against Zale even indirectly. Absent the

---

[24]*See, e.g., In re Wood,* 825 F.2d at 94 (holding that claim against third party was related to bankruptcy because any liability would be shared by estate and third party); *see also In re G.S.F.,* 938 F.2d at 1476 (holding that bankruptcy court had jurisdiction over third-party action because creditor who was defendant in third-party action would have substantial contribution claim against debtor if creditor lost); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1143 (6th Cir.1991) (holding that third-party action related to bankruptcy because debtor had agreed pursuant to reorganization plan to indemnify creditor, and distinguishing cases where third-party claimant had no indemnification agreement, and where claimant was not a creditor), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 583-84 (6th Cir.1990) (holding that suit against trustee was related to bankruptcy because if suit was successful, trustee would require reimbursement from the estate).

17

indemnification agreement, CIGNA has no independent claim against Zale for indemnification because it is *CIGNA*'s actions, not *Zale*'s, that are at issue. Consequently, the question is whether, alone, Zale's consent to the indemnification provision in the settlement can establish bankruptcy jurisdiction over the unrelated third-party claims.

In *In re Gallucci,* the Eleventh Circuit addressed the question of whether a compromise or settlement could establish bankruptcy jurisdiction over property of a third party not otherwise subject to the bankruptcy court's authority. In that case, the debtor had no interest in property owned by his mother.[25] The bankruptcy trustee, however, claimed that the property belonged to the estate because of a compromise the trustee entered into with a third party. In the compromise, the third party had quitclaimed the property to the trustee. Based on the quitclaim deed, the bankruptcy court ordered the debtor's mother to turn the property over to the estate.

The debtor's mother appealed, challenging the bankruptcy court's jurisdiction to order the turnover. She argued that because the third party had no authority to quitclaim her interest in the property, the compromise alone could not create jurisdiction. The trustee argued that the court could not look into the basis of the trustee's title, contending that the quitclaim deed "established jurisdiction by compromise, insulating

---

[25]The title was in her name, and the debtor did not occupy the property.

18

from inquiry the nature of the property and its connection with the bankruptcy estate prior to settlement." *Id.* at 743.

The Eleventh Circuit rejected the trustee's argument. The court held that the bankruptcy court had "relied entirely upon the compromise," *id.,* for its jurisdictional basis, and that the bankruptcy court had a duty to inquire into the compromise and determine if it actually impacted property of the estate or merely affected unrelated property. *Id.* at 744. Because the property had no effect on the estate absent the compromise, the court held that the compromise failed to establish a basis for jurisdiction. *Id.* Thus, the court held that parties could not accomplish through settlement what they could not attain directly—that is, bankruptcy court jurisdiction over the property. *See id.* at 743 n. 16 (noting that if the trustee had brought action against the debtor's mother directly, "the bankruptcy court clearly would not have had jurisdiction" over the property).

We find the reasoning of the Eleventh Circuit persuasive and applicable to the facts of this case. Because CIGNA, Feld, and NUFIC are not debtors and because the property at issue—the bad faith claims—is not property of the estate, the bankruptcy court would have no jurisdiction over the tort claims absent the indemnification provision in the settlement. Moreover, the tort claims do not implicate an independent obligation of Zale in favor of CIGNA. Once we look past the indemnification agreement, *In re Gallucci,* 931 F.2d at 744, no substantive basis for indemnification exists. For these reasons, the settlement cannot provide the basis

19

for jurisdiction over the bad faith claims. *Id.* at 743-744 (rejecting attempt to establish jurisdiction by compromise because compromise had no effect on estate prior to settlement).[26] Accordingly, CIGNA and Zale's attempt to establish jurisdiction fails,[27] and the bankruptcy court had no jurisdiction over Feld's and NUFIC's tort actions against CIGNA.[28]

---

[26]Moreover, Zale had no authority to act on Feld or NUFIC's behalf; therefore, Zale could not jeopardize their interests through its consent. *See Local No. 93 v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986) ("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors...."); *Browning v. Navarro,* 743 F.2d 1069, 1076 n. 20 (5th Cir.1984) (noting that "a district court, or a bankruptcy court, exceeds its power if it enters a consent decree to which there was not actual consent or which was contrary to the public interest or was the result of a jurisdictional defect"); *see also In re G.S.F.,* 938 F.2d at 1472 (declining to enjoin entity that had not been a party to earlier stipulation because "the court lacked jurisdiction").

[27]Because we hold that the bankruptcy court lacked jurisdiction, we do not reach CIGNA's argument that the injunction is harmless because no cause of action for bad faith exists in Texas. This is an argument on the merits of the claim, and only becomes relevant *if* there is jurisdiction. We therefore do not address the merits of Feld's and NUFIC's bad faith claims. *See In re Vitek,* 51 F.3d at 538 (expressing "no view as to whether Texas law recognizes [a] cause of action [for breach of good faith]" because issue decided on procedural grounds).

[28]This result is consistent with the policy that bankruptcy should benefit only the debtor. *See Pacor, Inc.,* 743 F.2d at 996 ("Bankruptcy jurisdiction, however, was not conferred for the convenience of those not in bankruptcy."). Otherwise, creditors would have too much incentive to push a failing enterprise into bankruptcy not for the debtor's sake, but for their own interests. We decline to create such a rule because:

> "[I]t could discharge the debts of nondebtors ... as
> well as of debtors even if the creditors did not
> consent.... If the court could do all these nice

20

We turn now to the contract claims.[29] CIGNA and Zale suggest that no contract rights have been impaired by the issuance of the injunction. Indeed, the bankruptcy court believed that the protective language it added to the injunction accomplished precisely that result—that is, no impairment of contract rights.[30] Protection of defensive rights, however, does not encompass all

> things the result would indeed be to make the property of bankrupts more valuable than other property—more valuable to the creditors, ... [and] the result would not only be harm to third parties, such as the [tort claimants], but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law."

> *Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 163 (7th Cir.1994).

[29]Briefly, Feld claims that the insurance policy entitles him to coverage, and NUFIC claims that CIGNA has improperly bypassed the limits on its policy and has shifted liability to NUFIC's excess policy.

[30]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 156 ("[T]he relief requested [from] the Court is not intended to in any way prejudice National Union's rights to raise coverage issues.... So it seems to me that where the record stands now is that there is in effect an agreement by the moving parties that National Union's rights to [assert] coverage issues will be unaffected by the court order on the motion to approve the settlement."); *Id.* at 216-17 ("Any parties who are not parties to the settlement will be protected. The settlement will not prejudice their abilities to defend themselves if there is any action sought against them."); Order on Mot. for Reh'g, 9 Bankr.Ct.R. at 1534 ("Feld is not a party to the settlement and has not settled with these bankruptcy estates. Although the court used broad injunction language, Feld reads that language too broadly. The Court did not enjoin Feld from asserting contract rights, if any, he may have with Cigna or anyone else. Nor did the court enjoin Feld from having a judgment, if any, obtained against him by the debtors reduced by the amounts paid to the estates in this settlement, if appropriate. Feld's contract rights, if any, are unaffected.").

rights Feld and NUFIC may have with respect to the policy. NUFIC's declaratory judgment action, for example, exerted an offensive right. Because the injunction explicitly deprives NUFIC and Feld of any offensive contract rights they may have,[31] the injunction impairs their rights. We therefore examine the bankruptcy court's jurisdiction over CIGNA and Zale's request for the type of injunctive relief the bankruptcy court granted.

Feld and NUFIC argue that the bankruptcy court lacked jurisdiction because the insurance policy is not property of the estate. An insurance policy frequently is property of the estate,[32]

---

[31]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 216-17 ("There was also an issue raised regarding injunction against offensive litigation against parties to the settlement because of the facts that they reached a settlement, how they went about negotiating it. The Court will enter that injunction.... Frankly, it's going to involve anyone else who's not a party to the settlement.... [T]hey will not be able to bring offensive action against parties as a result of the settlement."); Order on Mot. for Reh'g, 9 Bankr.Ct.R. at 1534 ("The injunction does bar Feld from commencing litigation to recover on claims, if any, arising from any persons' participation in the settlement.").

[32]*See, e.g., Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51, 56 (5th Cir.1993) (listing casualty, collision, life and fire insurance as policies whose proceeds are property of estate, whereas malpractice policies are not property of estate); *St Clare's Hosp. & Health Ctr. v. Insurance Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.),* 934 F.2d 15, 18-19 (2d Cir.1991) (noting that insurance policies are property of debtor's estate, when debtor is insurer's insured); *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325, 329-30 (8th Cir.1988) (finding related-to jurisdiction because insurance policy was property of estate); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 92 (2d Cir.) (holding that products liability policies were property of estate), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 560 (1st Cir.1986) (holding that products liability policy is property of estate, because debtor has right to have insurer satisfy claims against debtor); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),* 788 F.2d 994, 1001-02 (4th Cir.) (holding that products liability

22

because the insurance policy usually indemnifies the debtor.[33]  We have excluded the proceeds of director and officer liability policies from property of the estate, however, when those proceeds directly paid the individual officers and not the debtor.[34]  Feld and NUFIC argue that we should likewise exclude the $10 million in proceeds from the policy at issue in this case.  CIGNA and Zale argue that the policy and its proceeds are property of the estate because the policy includes a reimbursement element, under which

---

policies are property of debtor because policies reimburse debtor for claims against debtor), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

[33]*See In re Edgeworth,* 993 F.2d at 55 ("Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself.  Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.").

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim.  When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.  In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

*Id.* at 55–56.

[34]*See In re Vitek,* 51 F.3d at 533-34 (noting that proceeds of D & O policies were not part of bankruptcy estate (citing *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391 (5th Cir.1987)));  *In re Louisiana World Exposition, Inc.,* 832 F.2d at 1399-1400 (holding that proceeds of D & O policies are not property of estate because D & O policies do not reimburse corporation);  *cf. Minoco Group v. First State Underwriters Agency (In re Minoco Group),* 799 F.2d 517, 519 (9th Cir.1986) (holding that D & O indemnity policy was property of estate because it indemnified debtor against claims by directors and officers).

CIGNA pays Zale for certain expenses. We need not decide whether the *proceeds* are property of the estate, if we find that the disputes over the CIGNA *policy* can have an effect on the estate.

Feld and NUFIC argue that the contract claims had no effect on the estate. They correctly state that the effect must be on the estate, not merely on the debtor. *In re Wood,* 825 F.2d at 94 ("To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor.").[35] Feld and NUFIC argue that because the creditors approved and confirmed the plan prior to the settlement approval, they assumed that the estate did not include any insurance proceeds and therefore the settlement cannot have affected the estate. We disagree. The disclosure statement explicitly stated that:

> The Proponents believe that recoveries from third party claims could be substantial. However, the Proponents are presently unable to predict the precise amount of such recoveries. Therefore, the Proponents of the Plan do not make any representation or warranty whatsoever as to the value, if any, of th[ose recoveries].

Disclosure Statement, Bankr.Ct.R. at 568. Thus, we infer that the creditors approved the plan on the assumption that some amount of proceeds from CIGNA would flow into the estate. Moreover, the plan intertwines these claims with other provisions of the plan.[36] Suits

---

[35]*See also In re Boone,* 52 F.3d at 961 (holding that "related to" jurisdiction required an effect on the estate not merely on the debtor).

[36]In the disclosure statement for its reorganization plan, Zale stated that:

> "The Proponents believe that potential claims are covered by the directors and officers insurance and that the insurers may well be liable for all or most of

24

over the CIGNA policy will tie up the policy assets and other assets of the Litigation Entity due to the litigation and its attendant expenses.[37] For these reasons, we hold that Feld and NUFIC's contract claims had an effect on the estate.[38] Accordingly, the bankruptcy court had "related to" subject-matter jurisdiction over the contract claims.

Feld and NUFIC argue that, even if the court had jurisdiction

---

the policy limits. In this regard, the Proponents intend to preserve to the fullest extent the ability to make claims under such policies. To that end, the Proponents have reached a tentative agreement with representatives of certain officers and directors to settle all outstanding director and officer claims, conditional upon the agreement of the carriers to fund such settlement. As of the date of the filing of this Disclosure Statement, the insurers have not responded to the request by the directors and officers that the insurers fund the agreement. A response is expected, however, in the near future. Failure to reach an agreement with the insurers may result in a restructuring of the agreement with the directors and officers.").

Disclosure Statement, 5 Bankr.Ct.R. at 525; *see also id.* at 567 ("At the present time, the Proponents have identified potential claims against third parties as discussed further in other sections of this Disclosure Statement, including ... certain current and former directors and officers; ... and various directors' and officers' liability insurance carriers.").

[37]*See American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621, 624 (9th Cir.1989) (holding that related-to jurisdiction existed for third-party claim against debtor's guarantor, because guarantor would make claim against officers' stock and interfere with critical officers' participation in management of reorganization plan).

[38]Because this holding involves a reorganization plan, we make no prediction as to whether the result would be different in a Chapter 7 case. *See Celotex,* --- U.S. at ----, 115 S.Ct. at 1500 (comparing Chapter 11 and Chapter 7 cases and noting that "[t]he jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter").

over their contract claims generally, that jurisdiction extended only to a temporary injunction, not a permanent one. They contend that a permanent injunction is outside the bankruptcy court's jurisdiction because the contract claims will have no effect on the estate after confirmation of the plan. The confirmation of a reorganization plan or the close of a bankruptcy estate regularly results in the dismissal of related claims,[39] because the nexus between the related claim and the bankruptcy estate no longer exists.[40] However, we distinguish "between the determination of the existence of jurisdiction at the outset of [the dispute] and the determination of whether "related' claims should be dismissed with the dismissal of the bankruptcy case." *In re Smith,* 866 F.2d at

---

[39]*See Querner v. Querner (In re Querner),* 7 F.3d 1199, 1201 (5th Cir.1993) ("[A]s a general rule the dismissal or closing of a bankruptcy should result in the dismissal of related proceedings."); *Smith v. Commercial Banking Corp. (In re Smith),* 866 F.2d 576, 580 (3d Cir.1989) ("As a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings' because the court's jurisdiction of the later depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings."). *See In re Querner,* 7 F.3d at 1201 ("Notwithstanding the general rule, however, nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case."); *Carraher v. Morgan Elec., Inc. (In re Carraher),* 971 F.2d 327, 328 (9th Cir.1992) ("[B]ankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed.").

[40]*In re Querner,* 7 F.3d at 1201 ("The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding."); *In re Lemco Gypsum, Inc.,* 910 F.2d at 789 ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property."). This is not an automatic rule, however.

580.[41]  Accordingly, because jurisdiction existed at the time of the settlement hearing, the bankruptcy court had jurisdiction over the request for injunctive relief on the contract claims.

B

Feld and NUFIC argue nonetheless that, even if the bankruptcy court had *jurisdiction* to enjoin their contract claims, the bankruptcy court had no *power* to enter the permanent injunction at issue.  Section 105 provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Although we interpret § 105 liberally, *Momentum Mfg. Corp. v. Employee Creditors Committee (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir.1994), a § 105 injunction must be consistent with the rest of the Bankruptcy Code, *see Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.),* 4 F.3d 1329, 1334 (5th Cir.1993) ("[T]he powers granted by that statute must be exercised in a manner that is consistent with the Bankruptcy Code.").  A § 105 injunction cannot alter another provision of the code.  *Id.* (holding that § 105 injunction was improper because it purported to alter other Code provision).[42]

---

[41]*See also In re Querner,* 7 F.3d at 1201 (addressing existence of jurisdiction "while the [bankruptcy] case was proceeding")*;  In re Morris,* 950 F.2d 1531, 1534 (11th Cir.1992) (looking to whether the dispute "was related to the bankruptcy case at the time of its commencement").

[42]*See also Landsing Diversified Props. v. First Nat'l Bank & Trust Co. (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 601 (10th Cir.1990) ("[A] bankruptcy court's supplementary equitable powers [under § 105(a) ] may not be exercised in a manner that is inconsistent with the other, more specific

Feld and NUFIC argue that the injunction was improper, contending that the injunction eradicated any liability of CIGNA for contract debts to Feld or NUFIC and therefore violated § 524 of the Bankruptcy Code.[43]  Section 524 prohibits the discharge of debts of nondebtors.[44]  Accordingly, we must overturn a § 105 injunction if it effectively discharges a nondebtor.  *See In re Vitek,* 51 F.3d at 536 n. 27 ("[N]on-debtor property thus should not ordinarily be shielded by the powers of the bankruptcy court.").

---

provisions of the Code.");  *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985) ("[S]ection 105 does not authorize the bankruptcy court to create rights not otherwise available under applicable law.");  *cf. United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (holding that § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity").

[43]Section 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).

[44]*See In re Edgeworth,* 993 F.2d at 53 (holding that § 524(e) discharges only the debtor's liability);  *Citizens Bank & Trust v. Case (In re Case),* 937 F.2d 1014, 1025 (5th Cir.1991) (holding that bankruptcy court can only determine dischargeability of debts owed by debtor, not those owed by third party);  *see also First Fidelity Bank v. McAteer,* 985 F.2d 114, 118 (3d Cir.1993) ("While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties.  Section 524(e) specifically limits that discharge.");  *McAteer,* 985 F.2d at 118 (noting that although bankruptcy court can and does alter obligations of debtor, the Code does not have the same effect on the obligations of nondebtors);  *In re Western Real Estate Fund, Inc.,* 922 F.2d at 600 (rejecting permanent injunction against third party because it effectively discharged nondebtor);  *In re Western Real Estate Fund, Inc.,* 922 F.2d at 600 ("Congress did not intend to extend [fresh-start] protection" to third parties);  *In re American Hardwoods,* 885 F.2d at 625-26 (accepting argument that permanent injunction improper because would effectively discharge nondebtor, an effect prohibited by § 524).

> [W]hile a temporary stay prohibiting a creditor's suit against a nondebtor ... during the bankruptcy proceeding may be permissible to facilitate the reorganization process in accord with the broad approach to nondebtor stays under section 105(a) ..., the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor. Not only does such a permanent injunction improperly insulate nondebtors in violation of section 524(e), it does so without any countervailing justification of debtor protection....

*In re Western Real Estate Fund, Inc.,* 922 F.2d at 601-02; *see also In re American Hardwoods,* 885 F.2d at 626 (concluding that "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief sought").

CIGNA and Zale argue that courts have upheld permanent injunctions against third-parties in other cases. In those cases, however, the courts upheld permanent injunctions of third-party claims because while the injunction permanently enjoined the lawsuits, it also channeled those claims to allow recovery from separate assets and thereby avoided discharging the nondebtor. *See S.E.C. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 960 F.2d 285, 293 (2d Cir.1992) (approving settlement that excluded class from sharing in recovery fund because class would receive fair amount from other funds), *cert. dismissed,* --- U.S. ----, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *MacArthur Co.,* 837 F.2d at 94 (holding that injunction did not discharge creditor because third-party interest could be asserted against settlement fund); *cf. Cullen v. Riley (In re Masters Mates & Pilots Pension Plan),* 957 F.2d 1020, 1032 (2d Cir.1992) (rejecting settlement bar that eliminated creditor's debt because settlement did not fairly compensate third party for lost rights).

The injunction at issue in this case provided no alternative means for Feld and NUFIC to recover from CIGNA for their offensive contract rights. Accordingly, because the permanent injunction as entered improperly discharged a potential debt of CIGNA, a nondebtor, the bankruptcy court exceeded its powers under § 105.

The impropriety of a permanent injunction does not necessarily extend to a temporary injunction of third-party actions. Such an injunction may be proper under unusual circumstances. *See Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir.1993) ("Some courts have held that the debtor's stay may be extended to non-bankrupt parties in "unusual circumstances.' " (citing *Robins,* 788 F.2d 994)); *Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) ("Several courts have held that under specific circumstances nondebtors may be protected by the automatic stay—even though such protection may be temporary—if it contributes to the debtor's efforts to achieve rehabilitation."). These circumstances include 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.[45] When

---

[45]*See Patton,* 8 F.3d at 349 ("Such circumstances usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization."); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d at 293 ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." (citing *Robins* )); *In re A.H. Robins Co.,* 788 F.2d at 999 (describing "unusual situation" in which enjoining third parties might be

either of these circumstances occur, an injunction may be warranted. *See In re Drexel Burnham Lambert, Inc.,* 960 F.2d at 293 (approving of injunction because settlement was "unquestionably an essential element" of reorganization and injunction a "key component" of settlement). If not, a bankruptcy court may not enjoin the third-party action.[46]

Feld and NUFIC argue that this case does not involve "unusual circumstances" and that, even if it did, the bankruptcy court did not make the required findings to that effect. If the bankruptcy court does not determine that unusual circumstances exist, the court may not enter an injunction of the third-party actions. *See In re American Hardwoods,* 885 F.2d at 626-27 (distinguishing *Robins* because in that case injunction would only affect fraction of creditors and court had made finding that injunction was essential to plan and entire reorganization hinged on injunction); *O'Malley Lumber Co. v. Lockard (In re Lockard),* 884 F.2d 1171, 1179 (9th

---

appropriate as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."); *id.* at 1003-06 (stating that § 105 injunction may be appropriate where proceeding would have an adverse impact on debtor's ability to reorganize or deplete property of estate).

[46]*See Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 141-42 (10th Cir.1994) (refusing to extend stay to third party because "unusual situations" exception did not apply where claims against third party were "separate and independent from the claims asserted against [the debtor]"); *International Bus. Machs. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 736 (7th Cir.1991) (refusing to extend stay to debtor's insurer because *Robins* test not met and suit would not "cause the debtor, the bankruptcy estate, or the reorganization plan "irreparable harm' ").

Cir.1989) (noting that, even if *Robins* rule were adopted, unusual situation had not been shown); *cf. MacArthur Co.,* 837 F.2d at 93 (noting that court had made factual finding that suits would "adversely affect property of the estate and would interfere with reorganization").

In this case, the bankruptcy court found that:

> The relationship to other motions to settle other litigation is before the Court, and the relationship to the prospect of either litigating or otherwise resolving other causes of action which belonged to the estate originally, or which now belong to the estate as resolved at confirmation of the proponents' plan. Those last two factors should not be minimized. There is a significant and substantial relationship between this settlement and other settlements that have been presented to the Court. Those settlements considered globally will result in substantial consideration being paid to the bankruptcy estate. This settlement fits within the fabric of the other settlements that have been reached which are very important to the creditors of these estates. Further, the ownership of whatever subrogation rights CIGNA may have will enable the estate to proceed to offer global settlements to other persons. That is consistent with the plan that the court has just confirmed, a key provision of which was to gather all causes of action, both those of the estate and those of others, in one place so that any persons subject to litigation would be able to settle globally at one time.... [T]hat is a very valuable consideration.

Confirmation Hearing, 3 Bankr.Ct.R. at 197-98. We hold that this language under the circumstances satisfies the "unusual circumstances" requirement because it clearly identifies the settlement as providing "substantial consideration" to the estate and constituting part of a "key provision" of the plan. Accordingly, the bankruptcy court had power under § 105 to enjoin temporarily the contract claims.

C

Feld and NUFIC further argue that the injunction was improper

32

because the court failed to follow the procedures required by the Bankruptcy Code for the entry of a § 105 injunction. They contend that the bankruptcy court erred in granting the injunction without conducting a full adversary proceeding. Under Rule 7001, a proceeding to obtain an injunction requires an adversary proceeding. *Lyons v. Lyons (In re Lyons),* 995 F.2d 923, 924 (9th Cir.1993) (holding that, when a Rule 7001 category was at issue, the movant "may obtain the authority he seeks only through an adversary proceeding").[47] Rule 7001 matters incorporate much of the Federal Rules of Civil Procedure, *In re Haber Oil Co.,* 12 F.3d at 437 (noting that adversary proceeding rules "generally "either incorporate or are adaptations of most of the Federal Rules of Civil Procedure.' " (quoting Fed.R.Bankr.P. 7001 adv. comm. note)),[48] and they equate to full-blown lawsuits, *see Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In re Transamerican Natural Gas Corp.),* 978 F.2d 1409, 1416 (5th Cir.1992) (describing adversary proceedings as " "full blown federal lawsuits within the larger bankruptcy case,' ... which are governed by all of the rules in Part VII of the Bankruptcy

---

[47]*See also* Fed.R.Bankr.P. 7001 ("An adversary proceeding is ... a proceeding in a bankruptcy court ... (7) to obtain an injunction or other equitable relief."); *Haber Oil Co. Inc. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 437 (5th Cir.1994) ("A proceeding "to recover money or property' is an adversary proceeding, as are proceedings ... "to obtain an injunction or other equitable relief.' " (quoting Fed.R.Bankr.P. 7001)).

[48]*See also id.* at 438 (describing requirements of adversary proceeding as including "a complaint in compliance with Federal Rule of Civil Procedure 3," "a summons in keeping with Bankruptcy Rule 7004," "an allegation of jurisdiction," and "a statement that the proceeding was "core or non-core.' ").

Rules...." (quoting *Matter of Wood & Locker, Inc.,* 868 F.2d 139, 142 (5th Cir.1989))), *cert. dismissed,* --- U.S. ----, 113 S.Ct. 1892, 123 L.Ed.2d 646 (1993). In contrast, contested matters[49] require fewer procedural protections. *In re Transamerican Natural Gas Corp.,* 978 F.2d at 1416 ("[C]ontested matters are "subject to the less elaborate procedures specified in Bankruptcy Rule 9014.' Contested matter proceedings are generally designed for the adjudication of simple issues, often on an expedited basis." (quoting *Matter of Wood & Locker, Inc.,* 868 F.2d at 142)).

In order to initiate an adversary proceeding, a party seeking the equitable relief must file a complaint and serve each affected party. *See Village Mobile Homes, Inc. v. First Gibraltar Bank (In re Village Mobile Homes, Inc.),* 947 F.2d 1282, 1283 (5th Cir.1991) (stating that while a motion suffices for contested matters, an adversary proceeding requires filing a complaint in keeping with Bankruptcy Rule 7003); *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990) (stating that an adversary proceeding "must be commenced by a properly filed and served complaint" and a Rule 7001 matter initiated by motion rather than by complaint "fail[s] on procedural grounds"). We find no evidence in the record that CIGNA and Zale filed a complaint for an adversary proceeding to demand injunctive relief. Instead, they simply added the injunction to the settlement agreement. Including a matter governed by Rule 7001 in another matter already before the court, however, does not satisfy

---

[49]Contested matters are those issues for which Rule 7001 does not require an adversary proceeding.

the procedural rules required by Rule 7001. *See Brady v. Andrew (In re Commercial Western Finance Corp.),* 761 F.2d 1329, 1337 (9th Cir.1985) (requiring party to comply with adversary proceeding requirements rather than dispose of third party's claim in reorganization plan); *In re McKay,* 732 F.2d 44, 48 (3d Cir.1984) (holding that party cannot merely include Rule 7001 matter in reorganization plan, but must "fil[e] a complaint seeking [resolution of the matter] with the bankruptcy court and serv[e] a copy of it on each [affected] creditor"). Accordingly, CIGNA and Zale failed to initiate properly their request for injunctive relief.

CIGNA and Zale argue that NUFIC and Feld waived their rights to an adversary proceeding.[50] "We have recognized that such a

---

[50]CIGNA argues first that NUFIC waived the adversary proceeding requirement by failing to raise it in the courts below. We disagree. At the settlement hearing, NUFIC moved for a continuance "on the grounds that they have not had adequate time to prepare for this hearing, have not been provided adequate information to go to a full evidentiary hearing on this matter at the sole request of the Court." Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 112. NUFIC moved that they "be given at least three weeks time in which to prepare for the hearing." *Id.* The court denied the motion, stating that:

> What I'm trying to figure out is notwithstanding the lack of documents and notwithstanding any notice issues, I've still got a bottom line question I'm being asked, and that is whether the agreed judgment in Cigna's business is what Cigna agreed to constitute a reasonable agreement of those claims. I've got to assume that notice notwithstanding, there's really no reason to delay the hearing one way or the other.

*Id.* at 116. NUFIC also stated that it had already initiated a declaratory action in the district court and that such action was an adversary proceeding. *Id.* at 158 ("[W]e have filed a complaint in federal court. That has been noticed and removed to this Court, and we just want that on the

35

waiver is possible," *In re Haber Oil Co.,* 12 F.3d at 440 (discussing whether party "waived compliance with the requisites of an adversary proceeding"); *see also In re Village Mobile Homes,* 947 F.2d at 1283 ("Compliance with the requisites of an adversary proceeding may be excused by waiver of the parties."), but only if "the parties are apprised of and have a chance to address all the issues being decided." *In re Haber Oil Co.,* 12 F.3d at 440. Accordingly, parties have waived their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate. *Halverson v. Estate of Cameron (In re Mathiason),* 16 F.3d 234, 238 (8th Cir.1994).

CIGNA and Zale argue that NUFIC had a full opportunity to litigate the issues surrounding its contract claims. We disagree. Indeed, the court frequently prevented NUFIC and Feld from addressing the issues,[51] calling them a "sideshow,"[52] a "side

------

record because we think that is part of an adversary [proceeding] that we have already initiated.").

[51]After first asking: ("But if you're not a party to [the settlement] and I got creditors and officers and affiliates and insiders, so forth, of this case are willing, want to come into court to make a stipulation, should I even consider a non-party to the settlement and a non-creditor position."), Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 120, the court denied NUFIC's attempts. *See id.* at 127 (denying motion for continuance for "total lack of standing," after discussing standing issue with National Union, basing its denial on grounds that "National Union contend[s] that it is not a party-in-interest in this bankruptcy case"); *id.* at 141 (overruling objection to factual findings, stating that "I'm not here to determine and make specific findings on the underlying merits of the claims. I'm here to determine why the creditors have struck the deal that the

36

issue,"[53] and "irrelevant."[54]  Moreover, the settlement proponents themselves argued that NUFIC and Feld's claims were not before the court at the settlement hearing.  Confirmation Hearing, 3 Bankr.Ct.R. at 122 (arguing that continuance unnecessary because "National Union['s] submission in this matter does not oppose the fairness or reasonableness of the transaction from the perspective of debtor's estates [and] [t]hat is the only issue before Your Honor....").  Also, the bankruptcy court refused to permit testimony such as an adversary hearing would require.[55]  We

---

creditors have struck and on what understandings and then to determine if that's within a range of reasonableness.");  *id.* at 143 ("[T]he Court recognizes it's not here to make any findings of the underlying disputes that give rise to the settlement, but rather is called upon to determine that this settlement is reasonable.").

[52]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 109 ("All this question of who was told what and what happened where and what went on is a total sideshow to the underlying issues that the Court has to address in the motion.  That is, is the settlement reasonable?");  *id.* at 220 (instructing that, on the issue of bad faith, it would allow "no more side shows").

[53]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 243 (calling bad faith question "a side issue to a settlement between certain persons in the bankruptcy estate").

[54]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 232 ("[T]he Court will not address, I'll say it again, will not address those underlying issues that are irrelevant in the settlement.").

[55]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 154 ("With this state of the record, it seems to me we do not need to go into many of the other issues underlying factual disputes, and it also seems to me appropriate to continue in the process that we have done, and that is to permit a directed testimony by proffer and then offer of cross examination.").

We do not intend to hold that a bankruptcy court can never reach conclusions in an adversary proceeding without a full-blown evidentiary hearing, but such an abbreviated review is appropriate only where a party "d[oes] not present

37

consequently find no waiver on NUFIC's part.

CIGNA and Zale also argue that Feld waived his right to an adversary proceeding by leaving the hearing. The court, however, had already made it clear that it would not permit full litigation of NUFIC and Feld's claims. Accordingly, Feld would not have had an opportunity to raise his contentions effectively, and his counsel's departure cannot have waived his rights. Once Feld learned that the bankruptcy court had actually decided the issue, he moved for rehearing to correct the unanticipated errors. Feld's motion for rehearing further prevented a waiver. *See In re Village Mobile Homes,* 947 F.2d at 1283 (holding that party did not waive adversary proceeding protections when, although not present after given notice of hearing, party filed motion for rehearing).

Alternatively, CIGNA and Zale contend that the settlement hearing essentially was an adversary proceeding. Calling it an adversary proceeding, however, does not make it one. *See In re Haber Oil Co.,* 12 F.3d at 438 n. 1 ("Ordinary claims litigation is not transformed into an adversary proceeding simply by labelling it as one."). When third parties are affected, we scrutinize carefully the fairness of the hearing afforded. *In re Masters Mates,* 957 F.2d at 1031 ("[T]hird party participation in an evidentiary fairness hearing and court approval of the settlement bar are necessary to protect the rights of third parties.").

---

significant questions of disputed facts in its offer of proof." *American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.),* 963 F.2d 855, 859 (6th Cir.1992). Such is not the case here—NUFIC and Feld raised several disputed factual issues.

In this case, the court did not conduct an adversary proceeding. The bankruptcy court itself acknowledged that proper resolution of these issue required a separate hearing that it was not conducting at that time.[56] As discussed above, the parties did not fully litigate the issues, nor did they even approximate compliance with the procedural requirements. Moreover, we find no indication in the record that the bankruptcy court conducted the proper analysis and made the requisite findings for entry of a preliminary injunction. *See Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.),* 805 F.2d 1175, 1188-89 (5th Cir.1986) ("[T]he legislative history of § 105 makes clear that stays under that section are granted only under the usual rules for the issuance of an injunction."), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d at 858 ("When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a

---

[56]*See* Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 152 ("I understand that there is going to be an underlying dispute between the estate and National Union about coverage. We're not here to resolve that today. And that testimony under oath at the time whenever that is resolved and whatever forum will decide that question and will thereby fix parties' rights."); *id.* at 195-96 ("I need not decide the coverage and corresponding bad faith denial coverage issues. They have not been fully litigated before the Court. I understand from the parties they will be raised in other litigation and at other times. They are not ripe for decision and the Court does not decide it."); *id.* at 226-27 ( "[T]he Court won't make any findings of coverage and/or bad faith, simply reserve those for when raised dealing with the merits of whatever would be sought for National Union."); *id.* at 187 ("I haven't reviewed that complaint. I haven't even seen it. It may have coverage issues which would not be prejudiced by the injunction. It may have other issues which may be ended by the injunction. I just can't make any determination on that.").

bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65.").

> The four prerequisites to the issuance of a preliminary injunction are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest.

*In re Commonwealth Oil Ref. Co.,* 805 F.2d at 1189 (internal citations omitted); *accord In re Eagle-Picher Indus., Inc.,* 963 F.2d at 858. Because the bankruptcy court focused only on the fairness of the settlement to the estate,[57] it failed to address these issues, that is, whether CIGNA and Zale had satisfied the Rule 65 prerequisites. We therefore hold that there was no compliance with Rule 7001, constructive or otherwise. Moreover, we feel this case demonstrates the "difficulties that are apt to arise if the bankruptcy court too easily permits parties to circumvent the rules governing adversary proceedings." *In re Haber Oil Co.,* 12 F.3d at 440. CIGNA and Zale failed to follow the rules. The bankruptcy court compounded their failure by excusing their lapse and preventing NUFIC and Feld's attempts to salvage the situation. CIGNA and Zale cannot now benefit from their own mistake. *See Bear v. Coben (In re Golden Plan of Calif., Inc.),* 829 F.2d 705, 712 (9th Cir.1986) (reversing determination of issue covered by Rule 7001 because party seeking determination had failed to initiate an

---

[57]*See supra* nn. 51-54 and accompanying text.

adversary proceeding and commenting that party's failure to comply improperly imposed on affected party the "burden of challenging [the] action and thus contravened Rule 7001"); *In re Commercial W. Fin. Corp.,* 761 F.2d at 1337 (stating that if a party wants the benefits of the Bankruptcy Code, it "must carry the burden of following the mandated procedures"). Accordingly, we hold that the district court's injunction against NUFIC's and Feld's contract claims was improper.

Given that the district court had either no jurisdiction, no power, or used improper procedures to enjoin NUFIC's and Feld's claims, the question remains what remedy this Court should order—affirm a modified settlement that lacks the injunction or vacate the settlement entirely. NUFIC and Feld argue that we can affirm the settlement approval without the injunction. CIGNA contends that it would not have settled absent the injunction and accordingly affirming a modified settlement would be unfair.[58] We decline to speculate whether the bankruptcy court, which was intimately familiar with this bankruptcy case, would have approved

_____

[58]CIGNA's counsel stated at the settlement hearing that:

> The biggest incentive of paying your limits and going home instead of just paying lawyers to defend the lawsuit is you want to avoid litigation. And if this settlement simply means more litigation for CIGNA and its officers and its directors and its employees and lawyers and its lawyers' law firm, then at that point it doesn't make any sense for CIGNA to do it because what it will mean is that we just simply bought ourselves another lawsuit which will not deplete our limits.

Tr. Confirmation Hr'g, 3 Bankr.Ct.R. at 179-80.

the settlement without the injunction. Accordingly, we believe it more appropriate to reverse the approval order, vacate the entire settlement, and remand to the district court for reassessment of the settlement.

D

NUFIC and Feld also challenge the district court's factual findings that (1) the settling parties had acted in good faith and (2) the settlement exhausted CIGNA's policy limits. They contend that CIGNA is already arguing in other proceedings that these findings preclude NUFIC and Feld from arguing otherwise in future actions.[59] Given that we vacate the settlement, these findings no longer have any legal effect. Accordingly, we need not address the arguments on this issue.

Moreover, the res judicata and collateral estoppel effect of the bankruptcy court's findings is not a question for this Court. CIGNA is not asking us to give the findings preclusive effect in *this* case. Accordingly, we leave this issue for a future court to decide.[60]

---

[59]*See* Br. in Support of CIGNA Insurance Company's Mot. for Contempt Against National Union Fire Insurance Company, B.Ct.R. at 1548 (asserting in proceeding brought by National Union that settlement injunction acts as a bar against action and against litigation of issues of bad faith).

[60]We comment, however, that such findings could have preclusive effect against third parties only where the bankruptcy court had jurisdiction over their claims. *Latham v. Wells Fargo Bank,* 896 F.2d 979, 983 (5th Cir.1990) (requiring that " "the prior judgment must have been rendered by a court of competent jurisdiction' " (quoting *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc)); *Latham,* 896 F.2d at 983 ("[T]he preclusive effect of a bankruptcy decree must reflect the reality of its limited jurisdiction."). We also note for future

42

III

The bankruptcy court lacked jurisdiction over CIGNA and Zale's request to enjoin NUFIC's and Feld's tort claims against CIGNA. The bankruptcy court also lacked power under § 105 to permanently enjoin NUFIC's and Feld's contract claims against CIGNA. Lastly, the bankruptcy court failed to conduct an adversary proceeding as required by Rule 7001 for the entry of a § 105 temporary injunction. For these reasons, we REVERSE the judgment of the district court and REMAND for the district court to (1) vacate the approval of the settlement between Zale and its three former directors and CIGNA, and (2) conduct further proceedings consistent with this opinion.[61]

---

reference that the legal standard in a settlement hearing differs from that applicable in an adversary proceeding or state court trial. *Copeland v. Merrill Lynch & Co.,* 47 F.3d 1415, 1423 (5th Cir.1995) ("Examining whether a particular settlement is fair or equitable and in the best interest of the estate and creditors is a different inquiry, driven by different policies, than litigation of the actual claim."). Consequently, we doubt that the findings of the bankruptcy court in a settlement hearing would have preclusive effect in adversary proceedings or state court trials. *Id.* at 1422 ("Collateral estoppel does not preclude litigation of an issue unless both facts and the legal standard used to assess them are the same in both proceedings." (citing *Recoveredge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir.1995); *Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 & n. 1 (5th Cir.1991))).

[61]Because we reach our conclusion on jurisdictional and procedural grounds, we need not and do not address the parties' remaining arguments.