RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re GREEKTOWN HOLDINGS, LLC,

*Debtor.*

————————————————————————

DIMITRIOS PAPAS, aka Jim Papas, VIOLA
PAPAS, TED GATZAROS, and MARIA
GATZAROS,

*Appellants,*

*v.*

BUCHWALD CAPITAL ADVISORS, LLC,
Litigation Trustee for the Greektown
Litigation Trust, SAULT STE MARIE TRIBE OF
CHIPPEWA INDIANS, and KEWADIN CASINOS
GAMING AUTHORITY,

*Appellees.*

No. 12-2434

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 12-cv-12340—Paul D. Borman, District Judge.

Argued: July 23, 2013

Decided and Filed: August 26, 2013

Before: BOGGS and McKEAGUE, Circuit Judges, and BECKWITH, Senior District
Judge.[*]

_____

## COUNSEL

**ARGUED:** Lisa S. Gretchko, HOWARD & HOWARD ATTORNEYS PLLC, Royal
Oak, Michigan, for Appellants. Joel D. Applebaum, CLARK HILL PLC, Birmingham,
Michigan, for Buchwald Appellee. Grant S. Cowan, FROST BROWN TODD LLC,
Cincinnati, Ohio, for Chippewa and Kewadin Appellees. **ON BRIEF:** Nancy K. Stone,
Mary C. Dirkes, HOWARD & HOWARD ATTORNEYS PLLC, Royal Oak, Michigan,
for Appellants. Joel D. Applebaum, CLARK HILL PLC, Birmingham, Michigan, for

_____

[*]The Honorable Sandra Shank Beckwith, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

1

Buchwald Appellee.  Grant S. Cowan, FROST BROWN TODD LLC, Cincinnati, Ohio, for Chippewa and Kewadin Appellees.

—————————————

**OPINION**

—————————————

McKEAGUE, Circuit Judge.  At issue in this appeal is a claims bar order entered in an adversary proceeding connected with the bankruptcy of Greektown Holdings, LLC. The appellants, the Papases and Gatzaroses, and two of the appellees, the Sault Ste. Marie Tribe of Chippewa Indians and the Kewadin Casinos Gaming Authority,  are defendants in a fraudulent transfer action that was brought in federal bankruptcy court by Buchwald Capital Advisors, LLC.  Buchwald Capital Advisors is the trustee of the Greektown Litigation Trust and an appellee in this appeal.  The Sault Ste. Marie Tribe and the Kewadin Casinos Gaming Authority agreed to settle with Buchwald Capital Advisors.  However, they conditioned the settlement upon the entry of an order that would bar any claims against them "arising out of or reasonably flowing from" either the fraudulent transfer proceeding or the allegedly fraudulent transfers themselves.  The Papases and Gatzaroses objected to this requested order, but when they could not come up with any viable claims that would be enjoined by the bar order, the district court approved the settlement and entered the bar order.  A short time later, the Papases and Gatzaroses filed a motion for reconsideration in which they detailed additional claims that they feared might be barred by the order.  The district court denied their motion.

On appeal, the Papases and Gatzaroses argue that the bar order was improper and also contend that the district court abused its discretion when it denied their motion for reconsideration. The district court was clearly acting within its discretion when it denied the motion for reconsideration, so we affirm its order denying reconsideration.  But the bar order itself raises several interesting questions of first impression in this Circuit. These questions concern the district court's jurisdiction and power to enter the bar order and the proper scope of such an order.  Unfortunately, these issues have not been adequately briefed and argued by the parties and were not addressed below.  We

therefore remand this case to the district court and instruct the district court to reevaluate the bar order under the guidance provided in this opinion.

## I.  BACKGROUND

### The Greektown Bankruptcy and the Fraudulent Transfer Action

On May 29, 2008, Greektown Holdings, LLC, and several affiliates filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan.  Greektown Holdings owned Greektown Casino, LLC, the company that owned and operated the Greektown Casino in downtown Detroit.  The bankruptcy court confirmed a plan of reorganization on January 22, 2010, and the plan became effective on June 30, 2010.  The plan provided for the establishment of the Greektown Litigation Trust, for which Buchwald Capital Advisors, LLC, was named trustee.  We will refer to Buchwald Capital Advisors, which is one of the appellees in this appeal, as the "Trustee."

Before the plan became effective, the bankruptcy court authorized a committee of unsecured creditors to file a fraudulent transfer action.  The committee filed its complaint on May 28, 2010.  The Trustee was later substituted as the plaintiff in the action.  The defendants named in the complaint included the Papases and the Gatzaroses, the appellants in this appeal, as well as the Sault Ste. Marie Tribe of Chippewa Indians and the Kewadin Casinos Gaming Authority, both appellees in this appeal.[1]  We will refer to the Papases and the Gatzaroses together as the "Appellants" and refer to the Sault Ste. Marie Tribe and the Kewadin Casinos Gaming Authority together as the "Tribe."[2]

The fraudulent transfer complaint alleged that in December 2005, Greektown Holdings incurred $185 million dollars of debt and simultaneously transferred approximately $177 million to several transferees, including the Appellants and the

---

[1]Ted Gatzaros passed away during the course of this litigation.

[2]The fraudulent transfer complaint describes the Kewadin Casinos Gaming Authority as a political subdivision of the Sault Ste. Marie Tribe.

Tribe.  The complaint alleged that the Appellants directly received about $145 million and that the Tribe directly received $6 million.  However, the complaint also alleged that the $145 million transferred to the Appellants indirectly benefitted the Tribe because the Michigan Gaming Control Board had required the Tribe to pay this amount to the Appellants if Greektown Holdings failed to do so, and thus the transfer discharged obligations that the Tribe owed to the Appellants.  The Trustee therefore claimed that the Tribe was liable both for the $6 million it directly received and the $145 million that indirectly benefitted it.  The Trustee sought to recover the transfers under 11 U.S.C. §§ 544 and 550 and the Michigan Uniform Fraudulent Transfer Act.

**The Settlement Agreement**

Two years after the fraudulent transfer complaint was filed, the Trustee decided that the indirect benefit theory for recovering the $145 million from the Tribe was unlikely to succeed.  The Trustee and the Tribe agreed to a settlement, under which the Tribe would pay $2.75 million and relinquish approximately $2.58 million in claims it had filed against the estate of Greektown Casino, LLC.  The settlement was expressly conditioned upon the bankruptcy court's entering a bar order to read as follows:

> IT IS FURTHER ORDERED that all persons and entities are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim against the Tribe Defendants, including claims for indemnity or contribution, arising out of or reasonably flowing from the facts or allegations or claims in this MUFTA Adversary Proceeding, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in this MUFTA Adversary Proceeding Action, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere (collectively, the "Barred Claims").  These Barred Claims include, but are not limited to, any and all claims arising out of or reasonably flowing from the transfers which are the subject of this MUFTA Adversary Proceeding.

R. 1-1, Settlement Agreement, PageID # 44.  Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), the Trustee filed a motion for approval of the settlement in the Bankruptcy Court.

The Appellants filed an objection.  They also filed a motion to withdraw the reference in the United States District Court for the Eastern District of Michigan.[3]  The district court withdrew the reference and instructed the parties to file briefs.  It also held a hearing at which the parties were permitted to introduce evidence and argue their positions on the bar order.

At the hearing, a financial advisor employed by the Trustee testified about the settlement negotiations between the Trustee and the Tribe, offered his conclusion that the indirect benefit theory was unlikely to succeed, and gave his opinion that the settlement amount was reasonable.  The financial advisor stated that the bar order was a "critical aspect of the settlement" because the Tribe needed to eliminate the risk of litigation in order to obtain necessary financing.  He did not think that the settlement would have been possible without the inclusion of the bar order.

The Tribe submitted an affidavit from its CFO who averred that, due to the pending fraudulent transfer claims, the Tribe was experiencing difficulty in refinancing its existing debt and obtaining additional financing.  Lending institutions told him that the Tribe was not an attractive lending prospect while the fraudulent transfer action remained pending against it.  The Tribe contended that unless all claims against it arising out of the fraudulent transfer proceeding were barred, it would not be able to obtain the financing it needed.

Although they presented no evidence at the hearing, the Appellants raised numerous arguments against entry of the bar order.  They asserted that bar orders are only allowed in unusual circumstances and that the bar order was not essential to the bankruptcy reorganization.  They claimed that since the fraudulent transfer proceedings were in the early stages of discovery, they were unable to identify all the potentially barred claims that they might bring against the Tribe.  However, they suggested four possibilities: common law indemnity, fraud, contribution, and deepening insolvency.

---

[3]A district court can refer any or all bankruptcy cases or proceedings to the bankruptcy judges in its district and can withdraw the reference for a case or proceeding "for cause shown."  28 U.S.C. § 157(a) & (d).

They further contended that under Sixth Circuit precedent, the district court was required to hold an evidentiary fairness hearing to evaluate the fairness of the bar order. Additionally, they argued that the bar order should be mutual, barring claims by the Tribe as well as claims against the Tribe.

The Tribe and the Trustee argued that the four claims the Appellants had identified were not viable and that any such claims would be barred by sovereign immunity, by statutes of limitation, and by releases that the Appellants signed in connection with the allegedly fraudulent transfers. The Trustee further disputed the Appellants' contention that an evidentiary fairness hearing was required.

The district court granted the motion to approve the settlement and entered the bar order. The district court stated that although the Appellants lacked standing to challenge the fairness of the settlement because they were not creditors, it needed to consider the interests of third parties whose legal rights would be affected by the settlement. Preliminarily, the district court found it significant that the Appellants had never filed a cross-claim in the fraudulent transfer proceeding and that their summary judgment motion in that proceeding did not even hint at the possibility of asserting claims against the other defendants.

Additionally, the district court found that the four claims the Appellants had suggested that they might bring against the Tribe were not viable. Their suggested indemnity claim was not viable because they had directly received the $145 million transfer and there was no indication of vicarious liability. Their suggested contribution claim was not viable because claims for contribution arise only in cases that involve a common injury that results in common liability. The district court explained that "[t]he allegedly fraudulent transfers . . . are directly traceable to the individuals who received them. There is no 'common injury' in which the Papas and the Gatzaros Defendants share." R. 10, Opinion and Order, PageID # 315. The district court found the fraud and deepening insolvency claims to be equally meritless. It further concluded that even if the four proposed claims were viable, they would be barred by the Tribe's sovereign immunity.

Because the district court found that the bar order did not affect any viable claims possessed by the Appellants, it determined that an evidentiary fairness hearing was not required. Finally, the district court concluded that based on the evidence submitted by the Trustee and the Tribe, the terms of the settlement were fair and reasonable.

The district court entered its initial opinion and order approving the settlement agreement and the bar order on July 13, 2012. The Trustee and the Tribe filed a proposed order on July 19.[4] On July 26, the Appellants filed what they referred to as their "sole objection" to the proposed order (this objection related to discovery cooperation) and submitted a revised proposed order. The Trustee and the Tribe replied that they had no objection to the Appellants' revision, and the district court entered that order on August 9.

**The Motion for Reconsideration**

Two weeks later, the Appellants filed a motion asking the district court to reconsider its August 9 order. They explained that they had discovered potential claims against the Tribe under a Guaranty Agreement that had been executed twelve years earlier in the summer of 2000. This motion appears to be the first time in the adversary proceeding that there had been any mention of this Guaranty Agreement. The briefs filed with the district court and the statements at the evidentiary hearing indicated that certain guaranty obligations formed the basis of the Trustee's indirect benefit theory of recovery against the Tribe, but the document that established these guaranty rights had not been specifically referenced or filed as an exhibit.

In their motion for reconsideration, the Appellants argued that this Guaranty Agreement gave them viable claims (they identified two claims in particular) against the Tribe that were at risk of being enjoined by the bar order. They argued that the district

---

[4]The Eastern District of Michigan's Local Rule 58.1(c) provides that "[w]ithin seven days after granting the judgment or order . . . a person seeking entry of a judgment or order may serve a copy of the proposed judgment or order on the other parties . . . with notice that it will be submitted to the court for signing if no written objections are filed within seven days after service of the notice. . . . If objections are filed, within seven days after receiving notice of the objections, the person who proposed the judgment or order must notice it for settlement before the court."

court "was misled which resulted in a palpable error warranting reconsideration" because the Guaranty Agreement included a waiver of the Tribe's sovereign immunity and provided that the Appellants' claims were not barred by the statute of limitations. R. 17, Motion, PageID # 434, 450-51. The Appellants suggested a revision to the bar order that would explicitly exclude from its scope any claims brought pursuant to the Guaranty Agreement and related documents.

The district court denied the Appellants' motion for reconsideration. It noted that the Appellants had most likely possessed the Guaranty Agreement since 2000. Additionally, the Trustee had provided it to them during discovery in March 2011. But in their briefs and during the evidentiary hearing the Appellants had never "even hint[ed] that they may have [had] a claim or legal theory of recovery based on the Guaranty Agreement." R. 31, Order, PageID # 682. Nor did they mention the Guaranty Agreement when they filed their objection to the proposed order. The district court therefore ruled that "[t]he Papas and Gatzaros Defendants have offered no excuse for their failure to previously present this evidence and argument, and the Court declines to consider it now." *Id.* at PageID # 683.

The Appellants now appeal all three orders entered by the district court.

## II. ANALYSIS

### A. Motion for Reconsideration

We review a district court's denial of a motion for reconsideration for abuse of discretion (unless the movant asked the court to reconsider a grant of summary judgment). *Indah v. U.S. Secs. and Exch. Comm'n*, 661 F.3d 914, 924 (6th Cir. 2011). The Federal Rules of Civil Procedure do not provide for a "motion for reconsideration," but the local rules in the Eastern District of Michigan do. *See* E.D. Mich. Local Rule 7.1(h). The local rule explains that the decision to grant the motion is within the court's discretion. To establish grounds for reconsideration, "[t]he movant must not only demonstrate a palpable defect by which the court and the parties . . . have been misled

but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(h)(3).

The district court's order and the briefs from the Tribe and the Trustee all say that motions for reconsideration are treated as motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  R. 31, Order, PageID # 681; Tribe Br. at 31; Trustee Br. at 37.  Opinions from our court sometimes intone that mantra.  *See, e.g., Moody v. Pepsi-Cola Metro. Bottling Co., Inc.*, 915 F.2d 201, 206 (6th Cir. 1990) ("Motions for reconsideration of a judgment are construed as motions to alter or amend the judgment . . . .").  But context matters here.  Treating a motion for reconsideration as a motion to alter or amend the judgment makes sense when a party files a document titled "Motion for Reconsideration" in a district that does not have a local rule providing for such a motion.  Since in those districts there is no such thing as a "Motion for Reconsideration," a motion with that title that is filed within 28 days can be construed as a motion to alter or amend the judgment under Rule 59(e), and one that is filed after 28 days can be construed as a motion for relief from judgment under Rule 60(b).

But this approach makes little sense in the Eastern District of Michigan, which has a local rule specifically providing for a motion for reconsideration.  When a party files a motion for reconsideration pursuant to the Eastern District's local rule, we review the district court's ruling on the motion using the standard set forth in the local rule.  *See Indah*, 661 F.3d at 924 ("A motion for reconsideration is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case.").

In this case, there is no need to construe the motion for reconsideration as a motion to alter or amend the judgment because it was filed pursuant to the Eastern District's local rule.  Therefore, the question we must answer is whether the district court abused its discretion when it determined that the motion for reconsideration failed to demonstrate an outcome-determinative "palpable defect" that misled the court and the parties.

The question is not a hard one. The Appellants provide no reason to hold that the district court abused its discretion. Tellingly, they do not even invoke the standard from Local Rule 7.1(h) in their briefs (nor do they, as do the Tribe and the Trustee, invoke the Rule 59(e) standard). Unguided by the applicable standard, their numerous arguments all miss their mark.

*First*, the Appellants complain that the Guaranty Agreement was not mentioned in or attached to the complaint filed by the Trustee in the fraudulent transfer proceeding. But they do not deny that they possessed the Guaranty Agreement. Nor do they attempt to explain why the absence of the Guaranty Agreement from the complaint even matters.

*Second*, the Appellants insinuate that the Tribe behaved improperly by keeping them "in the dark" about the settlement negotiations for a long time. But they are sophisticated business people, represented by a large law firm, and their objection to what they apparently consider hardball litigation seems unreasonable. The settlement motion was filed on April 13, and the hearing was held on June 27. If the Appellants needed more time to prepare their arguments, they should have requested it.

*Third*, the Appellants contend that their potential claims under the Guaranty Agreement are not yet ripe and argue that the district court should not have forced them to raise unripe claims. But the district court did not require them to file a complaint alleging unripe claims. It just required them to identify what potential claims might be barred by the claims bar order. Whether these claims were ripe or unripe is irrelevant.

*Fourth*, the Appellants tout the merits of their claims under the Guaranty Agreement. The Tribe and the Trustee dispute that these claims have any merit. This disagreement is one we need not resolve. The issue before us is not the merits of these claims but rather whether the district court abused its discretion when it refused to reach the merits.[5]

---

[5]The Gatzaroses have filed a lawsuit based on one of these claims, and the Tribe has asked us to take judicial notice of some of the filings in that lawsuit. Since we do not reach the merits of the Guaranty Agreement claims, we deny as moot the Tribe's motions to take judicial notice.

Although the district court did not use the term, the import of its order—and what this issue really boils down to—is forfeiture. By waiting until a motion for reconsideration to raise their argument and not providing a good excuse for the delay, the Appellants forfeited it. "[A]bsent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331-32 (6th Cir. 2009). Therefore, we hold that the district court acted well within its discretion when it denied the Appellants' motion for reconsideration.

## B. Propriety of the Bar Order

The propriety of the bar order presents a more difficult question. To begin, what standards or principles guide a court in determining whether a bar order is proper in a case like this? The parties have cited three previous decisions from our court, but upon close inspection none of these decisions helps us here.

The first decision provides guidance for determining whether a settlement in a bankruptcy case is fair. The Federal Rules of Bankruptcy Procedure allow a bankruptcy court to approve a settlement upon the trustee's motion and after notice and a hearing. Fed. R. Bankr. P. 9019(a). Before approving the settlement, the court must "apprise itself of all facts necessary to evaluate the settlement and make an informed and independent judgment as to whether the compromise is fair and equitable." *Bard v. Sicherman* (*In re Bard*), 49 F. App'x 528, 530 (6th Cir. 2002) (per curiam) (quotation omitted). *Bard* sets out four factors that a bankruptcy court should consider when evaluating the fairness of a settlement.[6] *Id.*; *see also Hindelang v. Mid-State Aftermarket Body Parts Inc.* (*In re MQVP, Inc.*), 477 F. App'x 310, 313 (6th Cir. 2012) (noting that the Sixth Circuit applies *Bard* when faced with appeals from settlements in bankruptcy cases). These factors are useful when the issue on appeal is whether the settlement is fair, but the Appellants have not challenged the fairness of the settlement. Reply Br. at

---

[6]These factors are: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Bard*, 49 F. App'x at 530 (quotation omitted).

18-19. They challenge only the bar order entered in connection with the settlement. *Bard's* four-factor test, then, is inapplicable here.

The second decision provides that, in certain situations, a court must conduct a fairness hearing before imposing a bar order. Our court has held, outside the bankruptcy context, that when "a settlement agreement contains a bar order extinguishing possible legal claims of non-settling defendants, the court must conduct an evidentiary fairness hearing to determine whether the settling defendants are paying their fair share of the liability." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 484 (6th Cir. 2001). But this rule only applies when the defendants share a common liability and the non-settling defendant's right of contribution against the settling defendant is extinguished by the bar order. If a court eliminates the non-settling defendant's contribution right and in exchange reduces any judgment against the non-settling defendant by the settlement amount, the court must ensure that the settling defendant pays its fair share of the plaintiff's damages.[7] In this case, the district court determined that the Appellants had no right of contribution against the Tribe (a conclusion that the Appellants have not challenged on appeal), and therefore no evidentiary fairness hearing was necessary.

The third decision governs the circumstances under which a bankruptcy court can "enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan." *See Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 656 (6th Cir. 2002). We held that such an injunction is permissible, but instructed that it is appropriate only in "unusual circumstances," which can be found when seven factors are present. *Id.* at 658 (quotation omitted).

---

[7]Furthermore, this rule applies only when the judgment reduction specifies that the nonsettling defendant's liability will be reduced by the amount paid by the settling defendant—a reduction method known as the *pro tanto* method. *See Kovacs v. Ernst & Young* (*In re Jiffy Lube Secs. Litig.*), 927 F.2d 155, 160 & n.3 (4th Cir. 1991) ("A separate hearing on fairness from the perspective of the non-settling defendant is not required unless the district court chooses to adopt the 'pro tanto' method of setoff."); *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 306 (2d Cir. 2003) (explaining that no fairness hearing is required if the judgment reduction is at least as great as the settling defendant's proportionate fault). If the judgment reduction calls for a *pro rata* reduction method (each defendant pays an equal share of the total liability irrespective of relative fault) or a proportionate fault method (each defendant pays damages corresponding to its degree of fault), no evidentiary fairness hearing is necessary. *See Kovacs*, 927 F.2d at 160 & n.3.

The Appellants cite *Class Five Nevada Claimants* for the proposition that "[i]nvoluntary releases of third party claims against non-debtors . . . are disfavored as a matter of bankruptcy law" and should be implemented only in "unusual circumstances." Appellant Br. at 25. However, they do not explicitly argue that we should apply the seven-factor analysis when evaluating the bar order at issue here. Furthermore, this case involves a bar order entered in connection with a settlement agreement long after the plan of reorganization was confirmed, whereas *Class Five Nevada Claimants* involved an injunction incorporated into a plan of reorganization. Due to this distinction, the seven-factor test we applied in *Class Five Nevada Claimants* provides little help in determining whether the bar order here was proper.

Finding no guidance from these three previous decisions, we next consider the approach taken by the district court below. The district court essentially asked whether the order would bar any viable claims and then entered the order when it found that it would not. The Tribe and the Trustee contend that this approach was correct, stating that "[t]he District Court properly sought to determine whether [the Appellants] had a viable claim subject to the claims bar order," Tribe Br. at 23, and "[a]s the sole objecting parties to the settlement, Appellants had an obligation to credibly show that they had potentially viable claims against the Tribe Defendants that would be 'unfairly' or 'inequitably' impacted by the Claims Bar," Trustee Br. at 24.

But we are not inclined to adopt this approach. The whole purpose of a bar order is to bar claims. If there are no claims to bar, there is no need for a bar order and none should be entered. Furthermore, the district court's approach is unwieldy; it requires a time-consuming merits evaluation of each potential claim proffered by the party objecting to the settlement.

Therefore, finding little guidance from our previous decisions and disinclined to follow the approach taken below, we turn to decisions from other circuits for guidance. From these cases we discern three issues the district court should have resolved before deciding to enter the bar order in this case.

*First*, the district court should have initially determined whether it had jurisdiction to enjoin the potential claims encompassed by the bar order. *See Feld v. Zale Corp.* (*Matter of Zale Corp.*), 62 F.3d 746, 751 (5th Cir. 1995). A district court's jurisdiction over bankruptcy cases and proceedings comes from 28 U.S.C. § 1334(b), which gives the district courts "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The grant of jurisdiction over proceedings "related to" the bankruptcy case is quite broad. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).

"'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 489 (6th Cir. 1996) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (quotation omitted). "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]." *Id.* (quotation omitted). "Instead, there must be some nexus between the 'related' civil proceeding and the title 11 case." *Id.* (quotation omitted).

This case presents a slightly different twist from *Lindsey* because here the dispute over the bar order occurred after the Chapter 11 plan was confirmed. "At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 165 (3d Cir. 2004). It is possible that a bankruptcy court's "related to" jurisdiction diminishes somewhat post-confirmation. *Compare id.* at 167 ("At the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy

process—there must be a close nexus to the bankruptcy plan or proceeding."), *with* *Boston Reg'l Med. Ctr., Inc. v. Reynolds* (*In re Boston Reg'l Med. Ctr., Inc.*), 410 F.3d 100, 106-07 (1st Cir. 2005) (indicating that a bankruptcy court's jurisdiction does not diminish post-confirmation in the context of a liquidating plan of reorganization).

The Eleventh Circuit has held that when a defendant in an adversary proceeding conditions its agreement to a settlement upon the entry of a bar order, the claims encompassed by the bar order are necessarily "related to" the bankruptcy case. *See* *Munford v. Munford, Inc.* (*Matter of Munford, Inc.*), 97 F.3d 449, 454 (11th Cir. 1996). The court reasoned that "[b]ecause the nonsettling defendant's assertion of their . . . claims would have an effect on [the] estate being administered in bankruptcy, . . . a sufficient nexus exists between [the] title 11 adversary proceeding and the nonsettling defendants' . . . claims." *Id.* The court further reasoned that "it is the 'nexus' of [the claims covered by the bar order] to the settlement agreement" that confers jurisdiction. *Id.*

We decline to follow the Eleventh Circuit's approach. The "related to" inquiry asks not whether the *assertion* of the claims would effect the bankruptcy estate but whether the *outcome* of the claims would effect the estate. *See Lindsey*, 86 F.3d at 489. Furthermore, the "related to" inquiry asks not whether there is a nexus between the other proceeding and the *settlement agreement* but whether there is a nexus between the other proceeding and the *bankruptcy case*. *See id.* Additionally, despite the court's protestation to the contrary, the Eleventh Circuit's approach clearly results in "subject matter jurisdiction by consent." *See Munford*, 97 F.3d at 454. It allows the settling defendant to supply the bankruptcy court with subject matter jurisdiction to enjoin other claims simply by deciding to condition its agreement to the settlement upon the entry of an order barring those claims.

A better approach was taken by the Fifth Circuit in *Feld v. Zale Corporation* (*Matter of Zale Corporation*), 62 F.3d 746 (5th Cir. 1995). In *Feld*, the Fifth Circuit inquired simply whether the outcome of the actions covered by the bar order would affect the bankruptcy estate. *See id.* at 755-59. When it found that the outcome of some

of those actions would not affect the bankruptcy estate, the Fifth Circuit held that the bankruptcy court had no jurisdiction over them. *See id.* at 755-57. This approach comports with the "related to" test we followed in *Lindsey*, and this is the approach the district court should follow on remand.

*Second*, the district court should have determined whether it had the power to enter the order. Other circuits have answered this question differently. *Compare Munford*, 97 F.3d at 455 (holding that Bankruptcy Code § 105(a) and Federal Rule of Civil Procedure 16 give bankruptcy courts the authority to enter a bar order), *with Feld*, 62 F.3d at 759-62 (holding that Bankruptcy Code § 524 prohibits a bankruptcy court from permanently enjoining claims against a non-debtor but holding that § 105 gives it the power to temporarily enjoin such claims in "unusual circumstances"). When analyzing this issue, the district court may discern some guidance from our previous holding that Bankruptcy Code § 524 does not prohibit a court from releasing a non-debtor from liability. *See Class Five Nev. Claimants*, 280 F.3d at 657.

*Third*, the district court should have more closely scrutinized the bar order's scope. Other circuits have been careful to limit bar orders "to ensure that the only claims that are extinguished are claims where the injury is the non-settling defendant's liability to the plaintiffs" (i.e. claims for contribution or indemnity). *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 307 (2d Cir. 2003) (Sotomayor, J.); *see also Lead Plaintiffs v. HealthSouth Corp.* (*In re HealthSouth Corp. Secs. Litig.*), 572 F.3d 854, 863 (11th Cir. 2009) (noting that "the cases which have approved bar orders have involved orders that preclude claims by non-settling defendants against settling defendants where the injury to the non-settling defendant was its liability to the underlying plaintiffs"); *Betker v. U.S. Trust Corp., N.A.* (*In re Heritage Bond Litig.*), 546 F.3d 667, 678-79 (9th Cir. 2008) (adopting the *Gerber* approach for bar orders under the PSLRA).

In other words, "[c]ourts that have allowed bar orders have only barred claims in which the damages are measured by the defendant's liability to the plaintiff. Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff." *TBG, Inc. v. Bendis*, 36 F.3d 916, 928

(10th Cir. 1994) (quotation and internal citations omitted). Significantly, "[n]o court has authorized barring claims with independent damages." *Id.* This limitation makes sense because when the scope of a bar order is limited to claims for contribution or indemnity, the court can compensate the non-settling defendants for the loss of those claims by reducing any future judgment against them. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 274 (2d Cir. 2006) ("Ordinarily, the potential harshness of a bar order is mitigated by a judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability."). A bar order that enjoins independent claims and provides no compensation is problematic to say the least.

The bar order here enjoins all claims against the Tribe "arising out of or reasonably flowing from" both the facts and allegations of the adversary proceeding and the allegedly fraudulent transfers. Other circuits have found bar orders with similar language to be overly broad because they have the potential to bar claims for independent damages. *See Betker*, 546 F.3d at 680; *Gerber*, 329 F.3d at 307; *TBG, Inc.*, 36 F.3d at 929; *Cullen v. Riley* (*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*), 957 F.2d 1020, 1033 (2d Cir. 1992).[8] While we could amend the bar order ourselves to narrow its scope, *see Gerber*, 329 F.3d at 307 & n.7, we prefer to let the district court address the order's scope, in the first instance, as it sees fit.[9]

---

[8]The Tribe contends that the scope of the bar order is not overly broad because "[t]he claims bar order is limited to claims against the Tribe 'arising out of or reasonably flowing from the facts or allegations or claims' in the Adversary Proceeding." Tribe Br. at 24. They rely on a decision from the Eleventh Circuit stating: "The propriety of the settlement bar order should turn upon the interrelatedness of the claims that it precludes, not upon the labels which parties attach to those claims." *See Wald v. Wolfson* (*In re U.S. Oil and Gas Litig.*), 967 F.2d 489, 496 (11th Cir. 1992). However, the Eleventh Circuit has subsequently explained that this language referred to a disguised indemnity claim and that the opinion "expressly declined to address the issue of 'truly independent claims.'" *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir. 2004); *see also Betker*, 546 F.3d at 678 (noting that the Eleventh Circuit has "explicitly distanced itself from *In re U.S. Oil & Gas Litigation* by explaining that its holding in that case had narrow applicability because it had barred the cross-claims at issue there only because they were disguised contribution and indemnity claims, not truly independent claims"). The Eleventh Circuit currently follows the approach taken by other Circuits that asks whether the bar order enjoins claims beyond those for which "the injury to the non-settling defendant was its liability to the underlying plaintiffs." *See HealthSouth Corp.*, 572 F.3d at 863. The Tribe's reliance on the factual interrelatedness test is misplaced.

[9]Since the district court has already determined that the fraudulent transfer action does not involve potential claims for contribution or indemnity, it might very well determine that a bar order would be inappropriate in this case.

### III. CONCLUSION

We **AFFIRM** the district court's order denying the Appellants' motion for reconsideration. However, we have identified three significant issues that the district court should have addressed before entering the bar order. We therefore **VACATE** the bar order and **REMAND** the case, instructing the district court to reevaluate the bar order under the guidance provided in this opinion.